UNITED STATES of America,
Plaintiff–Appellant,

v.

Steven Curtis WAUPEKENAY,
Defendant–Appellee.

No. 91–2239.

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1992.

Richard A. Friedman, Dept. of Justice, Washington, D.C. (Don J. Svet, U.S. Atty., and Mary L. Higgins, Asst. U.S. Atty., District of N.M., with him on the briefs), for plaintiff-appellant.

Angela Arellanes, Albuquerque, N.M., for defendant-appellee.

Before BRORBY and EBEL, Circuit Judges, and VAN SICKLE, Senior District Judge.[*]

EBEL, Circuit Judge.

In this case, we review the district court's decision to grant the defendant-appellee's motion to suppress evidence obtained after the defendant-appellee assaulted police officers who had entered his house trailer to intervene in a domestic dispute. We must address two issues. First, did the defendant-appellee's wife give the officers consent to enter the trailer? Second, if the officers did not receive consent, should the evidence of the defendant-appellee's assault upon the officers inside the trailer be suppressed as the fruit of an illegal police entry?

We hold that the police officers did not have consent to enter the trailer. However, the evidence of the assault upon the

officers should not have been suppressed because the defendant-appellee did not have a reasonable expectation of privacy at the time he initiated the assault. Accordingly, we reverse the district court's order granting the defendant-appellee's motion to suppress and remand for trial on the merits.

## I. BACKGROUND

In the early morning hours of February 9, 1991, Nanette Waupekenay drove to the Jicarella Apache Police Station in Dulce, New Mexico, on the Jicarilla Apache Indian reservation, seeking police intervention in a domestic dispute with her common-law husband, Steven Curtis Waupekaney, the defendant-appellee. Specifically, she asked the tribal officers to assist her in removing her husband from the trailer in which they resided.

Four officers went to the trailer in response to her request: Sergeant Eli Natsena, Officer Duane Lynch, Officer Wilbur Montoya, and Officer Thomas Salazar. Mrs. Waupekenay explained the basis of the dispute and reiterated that she wanted her husband to leave the trailer. The parties dispute the course of the events that followed.

The officers' version is that Mrs. Waupekenay gave them express permission to enter the trailer. In addition, she informed them that Mr. Waupekenay was not drunk and had no guns or other weapons inside the trailer. In response to her requests, Officer Lynch knocked on the screen door and identified himself as a police officer. Mr. Waupekenay asked the police to leave, opened the front door approximately five inches, unlocked the screen door, and retreated to the back of the trailer. Mrs. Waupekenay again gave them permission to enter the trailer, and Officer Lynch and Sergeant Natsena did so.

Mrs. Waupekenay presents a different version of the events. She asserts that the officers never asked for, and she never gave, permission to enter the trailer and

---

[*] The Honorable Bruce M. Van Sickle, Senior District Judge, United States District Court for the District of North Dakota, sitting by designation.

that she never spoke with them about guns or other weapons. Furthermore, she contends, Officer Lynch opened the trailer door only after struggling against her husband's resistance.

Despite the difference of accounts, the outcome of the confrontation is not in dispute. The officers entered the trailer and saw Mr. Waupekenay standing near the back of the trailer, half-exposed through an open doorway. When Officer Lynch asked him to step fully into view, Mr. Waupekenay revealed that he was holding a .22 caliber semi-automatic rifle and he aimed it at the officers. The officers drew their weapons in response. During the course of the standoff that ensued, Mrs. Waupekenay asked the police to leave and to allow the couple to work it out themselves. The police remained and eventually persuaded Mr. Waupekenay to place the rifle on the floor. He was taken into custody, and the rifle was seized.

On May 9, 1991, Mr. Waupekenay was indicted in the United States District Court for the District of New Mexico for assaulting two tribal officers with a dangerous weapon in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 113(c).

On July 10, 1991, Mr. Waupekenay moved to suppress all evidence, statements, and items obtained as a result of the officers' entry into his home. Stating its findings and conclusions orally, the district court granted this motion on the ground that the statements and evidence were obtained in violation of Mr. Waupekenay's Fourth Amendment rights. The court found Mrs. Waupekenay to be more believable than the officers and accordingly adopted her version of the events as the truth. Thus, the court found (1) that Mrs. Waupekenay did not voluntarily consent to police entry of the trailer and (2) that no exigent reasons existed so as to permit the officers to enter without her consent. R., Vol. II, at 36–39.

The United States appeals the district court's decision. We have jurisdiction pursuant to 18 U.S.C. § 3731.

## II. DISCUSSION

### A. Standard of Review

■ The proponent of a motion to suppress bears the burden of establishing that the challenged search or seizure violated his or her Fourth Amendment rights. *United States v. Rios*, 611 F.2d 1335, 1344 (10th Cir.1979). The district court determined that Mr. Waupekenay satisfied this burden.

■ In evaluating the district court's decision, we focus upon Mr. Waupekenay's expectation of privacy at the time of the incident in dispute. We review the district court's findings of fact under the clearly erroneous standard, as " 'the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters' most appropriate for the district court." *United States v. Mendoza–Salgado*, 964 F.2d 993, 1011 (10th Cir.1992) (citation omitted); *accord Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). However, we review de novo the constitutionality of the police officers' actions under the Fourth Amendment, as well as other questions of law. *United States v. Evans*, 937 F.2d 1534, 1536–37 (10th Cir.1991).

### B. Lack of Consent

As discussed *supra*, the parties dispute whether Mrs. Waupekenay gave the police officers permission to enter the house trailer in order to respond to her request for assistance. The district court ruled that the officers did not have Mrs. Waupekenay's voluntary consent to enter the trailer. We affirm this determination.

■ Whether Mrs. Waupekenay gave the police officers explicit or implicit permission to enter the house trailer is judged by an "objective reasonableness" standard: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, —— U.S. ——, ——–——, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991); *see also Illinois v. Rodriguez*, 497 U.S.

177, ——, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) ("As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard. . . .' ") (citation omitted). If consent was given, whether it was voluntary or a product of coercion or duress "is a question of fact to be determined from all the circumstances." *Schneckloth v. Busta-monte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).

With respect to the consent issue, the court found Mrs. Waupekenay to be "more believ[ ]able" than the officers and accepted as true her testimony that the police never asked her for permission to enter the house trailer and that she never gave them permission. R., Vol. II, at 38. Because these findings are not clearly erroneous, we accept that the officers did not receive express consent to enter the trailer.

■ Furthermore, the court found "that there was no *voluntary* consent." *Id.* at 39 (emphasis added). This absence of voluntariness appears to stem from Mrs. Waupekenay's testimony during the suppression hearing, which the district court accepted, "that she was warned by the officers that if she did not cooperate, they were going to 'throw [her] in also' " and "that the police threatened her before they drew their weapons inside the house." *Id.* at 38. This coercion precludes the possibility that Mrs. Waupekenay implicitly consented to police entry—*e.g.*, by requesting police assistance in evicting her husband from the trailer and then failing to object when the officers entered the trailer for that purpose.

■ Given that the district court was in a better position to judge the credibility of the witnesses at the suppression hearing and the weight to be given the evidence presented, we cannot say that its determination that Mrs. Waupekenay did not voluntarily consent to police entry of the trailer was clearly erroneous.

■ The district court further found that "there were no exigent reasons to permit the officers to enter without consent." *Id.*

at 39. Although neither party challenges this determination on appeal, we note for purposes of the remainder of this opinion that we also affirm this finding. Thus, the officers entered the trailer illegally.

### C. No Reasonable Expectation of Privacy

■ We must next determine whether this illegal entry so tainted the evidence relating to Mr. Waupekenay's subsequent assault upon the officers as to require its suppression or whether Mr. Waupekenay's assault should be viewed as an independent matter. That is, we must decide whether the evidence at issue constitutes "fruit of the poisonous tree." The determinative factor in our inquiry is whether Mr. Waupekenay initiated the attack upon the officers with a legitimate expectation of privacy. We answer this question in the negative and accordingly conclude that the evidence relating to the assault need not be suppressed.

Mr. Waupekenay clearly had a heightened expectation of privacy when he was within his trailer. "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961) (citations omitted); *see* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .").

The sanctity of the home is not without limitations, however. Mr. Waupekenay can invoke the Fourth Amendment in this case only if he can show that the police officers violated "a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy.' " *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (citations omitted). In order to determine whether he had such an expectation of privacy, we ask two questions. First, did Mr. Waupekenay, "by his conduct, . . . 'exhibit[ ] an actual (subjective) expectation of privacy' "? That is, did he show that " 'he

[sought] to preserve [his actions] as private.'" *Id.* (citations omitted). *Cf. United States v. Salinas–Cano*, 959 F.2d 861, 864–65 (10th Cir.1992) (precautions taken by owner to manifest his subjective expectation of privacy are relevant to determination of whether owner gave consent for police to search containers). Second, if so, is this subjective expectation of privacy "'one that society is prepared to recognize as "reasonable"'"? *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580 (citations omitted).

We conclude that Mr. Waupekenay did not have a legitimate, reasonable expectation of privacy when he initiated criminal activity—assault—in the presence of the police officers within the trailer. Once Mr. Waupekenay was aware that the police officers were present in his home and were observing him, he could not have had a reasonable expectation of privacy for any actions initiated *subsequently* to that time in their presence. He obviously intended for the police to see him aim a semi-automatic weapon at them. Thus, he could not have had a legitimate expectation of privacy in that action. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.") (citations omitted).

■ By way of contrast, hypothetically if Mr. Waupekenay had initiated an illegal activity inside of the trailer months *before* the police entered and while he still had a legitimate expectation of privacy—*e.g.*, if he had begun to cultivate marijuana in his living room or if he had set up a methamphetamine laboratory—his Fourth Amendment rights would have been violated if the police seized evidence of this activity after an illegal entry even though such activity was ongoing and in process in the presence of the police. Similarly, an effort to dispose of preexisting contraband following an illegal entry does not validate the seizure of the contraband because the disposal effort is viewed not as a new or independent criminal act but rather as an extension of the previously initiated illegal activity.

*See United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir.1982) (evidence should be suppressed as "fruit of the poisonous tree" when a noncriminal act by defendant "reveals a crime that has been or is being committed by the time of the official misconduct" but not when defendant commits "a new, distinct crime" in response to illegal police conduct), *cert. denied*, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983). Here, Mr. Waupekenay *commenced* his illegal activity of assault *after* the unlawful entry and thus he could have had no reasonable expectation of privacy in that particular illegal act.

Our decision is consistent with the holdings of many other courts, state and federal, that have considered situations in which a defendant seeks to suppress evidence relating to his or her violence or threatened violence toward police officers subsequent to an unlawful search or seizure or a warrantless entry. In assault, resisting arrest, disorderly conduct, and weapons-related trials, these courts have uniformly rejected motions to suppress arising from skirmishes comparable to the one at issue in the instant case. *See, e.g., United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 3478, 87 L.Ed.2d 613 (1985); *United States v. King*, 724 F.2d 253, 256 (1st Cir.1984); *United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir.), *cert. denied*, 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971); *People v. Pearson*, 150 Cal.App.2d 811, 815–19, 311 P.2d 142, 145–46 (1957); *People v. Klimek*, 101 Ill.App.3d 1, 6, 56 Ill.Dec. 403, 408, 427 N.E.2d 598, 603 (1981); *Commonwealth v. Saia*, 372 Mass. 53, 360 N.E.2d 329, 332 (1977); *State v. Bale*, 267 N.W.2d 730, 732–33 (Minn.1978); *State v. Miller*, 282 N.C. 633, 194 S.E.2d 353, 358 (1973); *State v. Saavedra*, 396 N.W.2d 304, 305 (N.D.1986); *State v. Indvik*, 382 N.W.2d 623, 627–28 (N.D.1986); *State v. Townes*, 41 N.Y.2d 97, 100–03, 390 N.Y.S.2d 893, 896–98, 359 N.E.2d 402, 405–06 (1976); *State v. Burger*, 55 Or.App. 712, 639 P.2d 706, 707–08 (1982); *State v. Gaffney*, 36 Or.App. 105, 583 P.2d 582, 584 (1978); *State v. Miskimins*, 435 N.W.2d 217, 221–22 (S.D.1989); *State v. Aydelotte*, 35 Wash.

App. 125, 665 P.2d 443, 448 (1983); *see also* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, Vol I, § 9.4(f), at 759–60 (1984) ("On occasion, when the police conduct an illegal arrest or an illegal search, this will prompt the person arrested or subjected to the search to react by committing some criminal offense. He might attack the officer, attempt to bribe him, or make some criminal misrepresentation in an effort to bring the incident to a close.... In cases where the response has been a physical attack upon the officer making the illegal arrest or search, courts have ... held that the evidence of this new crime is admissible....") (footnotes omitted); *Aydelotte*, 665 P.2d at 447 ("All courts which have considered this issue ... agree that evidence of post-entry assaults on police officers are outside the scope of the exclusionary rule."); *cf. People v. Cantor*, 36 N.Y.2d 106, 113–14,. 365 N.Y.S.2d 509, 517, 324 N.E.2d 872, 878 (1975) (where police officers in street clothes approached defendant in a menacing fashion and defendant wielded a pistol before they identified themselves as police officers, evidence of pistol seized after unconstitutional seizure was suppressed because "[t]he pistol was revealed as a direct consequence of the illegal nature of the stop").

We note that, whereas our decision stems from the fact that Mr. Waupekenay lacked a legitimate expectation of privacy at the time he assaulted the officers, many of the above courts based their decisions upon somewhat different reasoning. Some courts have found the intervening act of the defendant to be so separate and distinct from the illegal entry or arrest as to break the causal chain. *See, e.g., Bale*, 267 N.W.2d at 733 (stressing that the assault committed by the defendant was "an intervening act of defendant's free will which dissipated any taint" caused by unlawful police behavior); *Townes*, 41 N.Y.2d at 102–03, 390 N.Y.S.2d at 897–98, 359 N.E.2d at 406 (holding that defendant's "free and independent action" in assaulting police officers "render[ed] any 'connection between the lawless conduct of the police and the discovery of the challenged evidence ... "so attenuated as to dissipate the taint" ' ")

(citations omitted); *Saavedra*, 396 N.W.2d at 305 (concluding that defendant's independent and intervening actions broke the chain of causation after considering such factors as "the temporal proximity of the illegality and the fruit of that illegality, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct") (citation omitted).

Other courts have stressed the limited objective of the exclusionary rule—*i.e.*, deterring unlawful police conduct by excluding evidence obtained as a result of such conduct—and the strong public interest in preventing and punishing force or threats of force directed against police officers. *See, e.g., Miller*, 194 S.E.2d at 357–58; *Gaffney*, 583 P.2d at 584; *Miskimins*, 435 N.W.2d at 221.

The rationale that is most applicable depends upon the underlying facts of the encounter. Here, we have chosen to rely on the defendant's lack of a reasonable expectation of privacy; in other situations, a different rationale may be more appropriate. However, whatever rationale is used, the result is the same: Evidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment.

## III. CONCLUSION

For the reasons stated above, we REVERSE the district court's order granting Mr. Waupekenay's motion to suppress and REMAND for a trial on the merits.