PER. CURIAM:
 

 Barrington A. Hamilton appeals from a judgment of the United States District Court for the Western District of New York (Curtin, J.) convicting him of unlawfully possessing cocaine and cocaine base. 21 U.S.C. § 844(a). Hamilton asserts that the district court erred in denying his motion to suppress evidence of items seized at the time of his arrest. The United States cross-appeals, claiming that the district court erred in setting aside the jury’s verdict, which found Hamilton guilty of possessing the drugs with intent to distribute, 21 U.S.C. § 841(a)(1), and substituting in its place a judgment for simple possession. We affirm denial of the motion to suppress, reverse the grant of the motion to set aside the jury’s verdict and remand for entry of a judgment consistent with the jury’s verdict.
 

 This is the latest in a series of cases involving couriers who use the overnight express bus between New York and Buffalo to import drugs into the Buffalo area.
 
 See United States v. Glover,
 
 957 F.2d 1004 (2d Cir.1992);
 
 United States v. Torres,
 
 949 F.2d 606 (2d Cir.1991);
 
 United States v. Springer,
 
 946 F.2d 1012 (2d Cir.1991);
 
 United States v. Montilla,
 
 928 F.2d 583 (2d Cir.1991). On October 6, 1989, Hamilton arrived in Buffalo on the overnight express bus. Because of the rather dubious distinction this bus holds, Erie County Sheriff’s Investigator Paul Terranova, Border Patrol Agent Daniel Allman and several other experienced narcotics agents were on the scene. Hamilton first attracted Terrano-va’s attention when, instead of entering the terminal when he alighted from the bus, he walked quickly around the front of the bus and began his exit through the bus parking area. When Terranova, his suspicions aroused, approached Hamilton and asked him for identification, Hamilton produced a New York driver’s license. Allman, who was following closely behind, heard Hamilton speak with a West Indian accent, and a discussion concerning Hamilton’s place of birth followed, during which he erroneously stated that he was born in New York.
 

 Thereafter, when Hamilton produced an alien registration card, Allman realized that he had stopped Hamilton only three days earlier as Hamilton was departing Buffalo for New York. At that time, a bearded and bespectacled Hamilton was in the company of a suspected drug courier and was evasive in answering questions and producing identification. Allman testified that, despite the earlier stop, he did not recognize Hamilton immediately, because Hamilton had shed his eyeglasses and shaved off his beard. After Allman recounted this earlier stop, Terranova asked for and was granted permission to search Hamilton’s bag. The search revealed brown plastic tape of a type often used to wrap drug packages. Allman then decided to check the authenticity of Hamilton’s identification card, and Hamilton and the agents went to the agents’ office in the terminal so that this could be done.
 

 While Allman was checking Hamilton’s immigration status over the telephone, he noticed a bulge in Hamilton’s pants. He asked Hamilton what it was and, receiving no response, he reached across the desk and patted him down. Allman testified that he felt a hard object. Another agent,
 
 *785
 
 John Crocitto, also patted Hamilton down and made a similar observation. When All-man asked Hamilton to remove the object, Hamilton dropped his pants and removed a handkerchief from his pocket. Doubting that the handkerchief was the object that he had detected earlier, Allman walked around the desk and discovered a package under the desk. The package was wrapped in the same type of brown plastic tape that was found in Hamilton’s bag. The package contained 190 individually wrapped envelopes of cocaine, eight small bags of cocaine base, and another bag containing three pieces of cocaine base. In total, the cocaine weighed 59.1 grams and was 80 percent pure. The cocaine base weighed 3.59 grams, and most of it was 78 percent pure. Expert testimony set the street value of these drugs at between $10,000 and $11,-000.
 

 The district court denied Hamilton’s suppression motion. The jury convicted him of possessing cocaine with intent to distribute, and the district court denied his motion to set aside the verdict as based on insufficient evidence. At the time of sentencing, however, the district court reconsidered Hamilton’s motion, set aside the jury's verdict finding Hamilton guilty of intent to distribute, and adjudged him guilty of simple possession.
 

 The district court did not err in rejecting Hamilton’s contention that his Fourth Amendment rights were violated. A limited investigative stop is permissible so long as there is “ ‘some minimal level of objective justification,’ ”
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting
 
 INS v. Delgado,
 
 466 U.S. 210, 217, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984)), “a reasonable suspicion supported by articulable facts that criminal activity ‘may be afoot.’ ”
 
 Id.
 
 (quoting
 
 Terry v. Ohio,
 
 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). Whether a stop is justified is determined under an objective standard — whether “ 'the conduct as a whole would appear suspect to one familiar with the practices of narcotics couriers, albeit the pattern of behavior is innocuous to the untrained observer.’ ”
 
 United States v. Villegas,
 
 928 F.2d 512, 516 (2d Cir.) (quoting
 
 United States v. Ramirez-Cifuentes,
 
 682 F.2d 337, 342 (2d Cir.1982)),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991).
 

 . [2-4] Here, the stop was based on such a reasonable suspicion. Hamilton arrived in Buffalo on a bus known to be favored by drug couriers and evasively attempted to leave via the bus parking lot rather than the terminal.
 
 See Sibron (Peters) v. New York,
 
 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (“deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of
 
 mens rea”); see also Glover, supra,
 
 957 F.2d at 1006, 1010 (entering terminal through an inappropriate gate). When it was discovered that Hamilton had been in Buffalo just three days earlier in the company of a suspected drug courier and had been evasive in answering questions at that time, further investigation was appropriate. Finally, the plastic tape found in Hamilton’s bag, his changes in appearance and his assertion that he was a native New Yorker provided the “minimal level of objective justification” needed to support a temporary detention for further immigration checks.
 

 We also find unpersuasive Hamilton’s contention that even if the stop was valid, the subsequent pat-down and demand that he empty his pockets were not. When the officers saw the unusual bulge in Hamilton’s pocket, they were faced with the possibility that it might be a weapon. Citing
 
 Terry, supra,
 
 392 U.S. 1, 88 S.Ct. 1868, the district court said that so long as a reasonably prudent person in Allman’s position would be justified in a belief that his safety or that of others might be endangered, he was justified in acting as he did. The district court concluded that such justification existed in the instant case. We find no error here.
 
 See Pennsylvania v. Mimms,
 
 434 U.S. 106, 112, 98 S.Ct. 330, 334, 54 L.Ed.2d 331 (1977);
 
 United States v. Oates,
 
 560 F.2d 45, 61-63 (2d Cir.1977). Because neither the investigative stop nor the pat-down violated Hamilton’s Fourth Amendment rights, the district court did not err in denying his motion to suppress.
 

 In reviewing the district court’s decision that the evidence was insufficient
 
 *786
 
 to support the jury’s verdict, we do not defer to the district court’s weighing of the evidence; we examine the evidence
 
 de novo. See United States v. Battle,
 
 892 F.2d 992, 998 (11th Cir.1990);
 
 United States v. Steed,
 
 674 F.2d 284, 286 (4th Cir.) (en banc),
 
 cert. denied,
 
 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 68 (1982);
 
 United States v. Dixon,
 
 658 F.2d 181, 188 (3d Cir.1981). We will sustain the verdict “ ‘if there is substantial evidence, taking the view most favorable to the Government, to support it,’ ”
 
 United States v. Ginsberg,
 
 758 F.2d 823, 829 (2d Cir.1985) (quoting
 
 Glasser v. United States,
 
 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), or, alternatively stated, if
 
 “any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,”
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Although the district court should have applied the same test,
 
 see United States v. Mariani,
 
 725 F.2d 862, 865-66 (2d Cir.1984), it is not clear that it did. The district judge’s comment, while orally granting the defendant’s motion, that he thought the jury was wrong in determining that there was an intent to distribute, is not an adequate reason for vacating the jury’s verdict. In any event, our review of the evidence convinces us that it supports the jury’s verdict. In
 
 Turner v. United States,
 
 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970), the Supreme Court held that possession of 48.75 grams of heroin in 275 glassine bags was sufficient “without more” to support a finding of distribution. Other circuits, following
 
 Turner,
 
 have held that intent to distribute drugs may be inferred from such evidence as the amount seized, its purity and its value.
 
 See, e.g., United States v. Martin,
 
 869 F.2d 1118, 1121 (8th Cir.1989) (“[T]he Eighth Circuit is among the many courts that have recognized that juries may infer intent to distribute solely from a defendant’s possession of an unusually large quantity of drugs.”);
 
 United States v. Compton,
 
 704 F.2d 739, 742 (5th Cir.1983) (“Intent may be inferred from the quantity.”);
 
 see also United States v. Savinovich,
 
 845 F.2d 834, 838 (9th Cir.),
 
 cert. denied,
 
 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The jury in the instant case learned that Hamilton was carrying 190 small bags of cocaine weighing nearly 60 grams, eight small bags of cocaine base and another bag containing three pieces of cocaine base, and that the street value of these drugs exceeded $10,000. A rational jury could find an intent to distribute based on this evidence alone. The contrast between this quantity and the drugs seized in
 
 United States v. Boissoneault,
 
 926 F.2d 230 (2d Cir.1991) (five grams of cocaine found in four small packets and a plastic bag) make that case clearly distinguishable. Moreover, Hamilton came from New York City on an express bus frequently used by drug couriers, had made a similar trip only three days before, possessed brown plastic tape similar to that wrapping the drug package, and engaged in furtive behavior. When inferences from all this evidence are drawn in favor of the Government, the evidence was sufficient to support the jury’s verdict.
 

 We affirm the denial of Hamilton’s motion to suppress evidence. We reverse the judgment entered below and remand for entry of a judgment consistent with the jury’s verdict.