**UNITED STATES of America**

v.

**Anthony CRUMP**

**No. CRIM. 3:98CR194 (CFD).**

United States District Court,
D. Connecticut.

April 16, 1999.

Order on Reconsideration
June 30, 1999.

Gary D. Weinberger, Federal Public Defender's Office, Hartford, CT, for defendant.

### RULING ON DEFENDANT'S MOTION TO SUPPRESS

DRONEY, District Judge.

The defendant, Anthony Crump ("defendant" or "Crump"), was indicted for possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). The defendant has filed a motion to suppress the firearm on the basis that the search which revealed the firearm was unconstitutional. For the reasons set forth below, the defendant's motion to suppress [Doc. # 9] is GRANTED.

### I. BACKGROUND

The defendant was arrested on September 1, 1998, by officers of the Hartford Police Department ("HPD"). At the time of the arrest, the officers searched the defendant and found a .25 caliber handgun in the right front pocket of his pants. On October 27, 1998, a federal grand jury returned an indictment charging the defendant with possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1).[1] Following his presentment and arraignment, the defendant filed the instant motion to suppress. The court conducted an evidentiary hearing on the motion to suppress and permitted the defendant and the government to file supplemental briefs following the hearing.

### II. FACTS

The court makes the following findings of fact based on the evidence presented at the hearing on the motion to suppress.

Thomas V. Daily, Assistant U.S. Attorney, U.S. Attorney's Office, Hartford, CT, for plaintiff.

---

1. The indictment recites that the defendant was convicted in the Connecticut Superior Court on December 6, 1995, for possession of narcotics in violation of Connecticut General Statute § 21a–279(a).

On September 1, 1998, Sergeant Gordon Jones, an eighteen-year veteran of the HPD who has made numerous investigatory stops and arrests, was conducting motor vehicle safety stops with four other HPD officers at a checkpoint located at the midpoint of Cabot Street in Hartford. Cabot Street is located in a high crime area known for drug trafficking, street violence, and motor vehicle violations. The purposes of the checkpoint were to determine whether the motor vehicle operators were in compliance with state motor vehicle laws and to reduce criminal activity in that neighborhood.[2]

At dusk, Sergeant Jones was standing on Cabot Street when he observed two vehicles pull onto Cabot Street from Homestead Avenue.[3] The first vehicle was blue and the second was white. Both vehicles stopped abruptly, short of the checkpoint, and backed up into parking spaces alongside the curb. Sergeant Jones, who was approximately twenty to thirty feet from the vehicles when they stopped before backing up, believed that both vehicles were attempting to avoid the police officers at the checkpoint.[4] Sergeant Jones then began walking toward the vehicles to investigate and ask the drivers for their operator's licenses, registrations, and insurance cards.

As Sergeant Jones approached the vehicles, the occupants had already exited the vehicles and were standing on the sidewalk in front of a building.[5] Sergeant Jones asked the person whom he believed to be the driver of the blue vehicle for his license, registration, and insurance card. This person produced his license and went to the blue vehicle to retrieve the other requested documents.

Sergeant Jones believed that one of the two other men standing on the sidewalk had been driving the white vehicle. One of these men was the defendant, Anthony Crump, but Sergeant Jones was not certain if Crump had been the driver of the white vehicle. Sergeant Jones asked both men which one of them had been driving the white vehicle and both denied being the driver. While he was standing with the defendant and the other man on the sidewalk, Sergeant Jones received a call on his radio from Officer Fernino, one of the other officers at the checkpoint. Officer Fernino had called to ask Sergeant Jones about an individual that had previously been stopped at the checkpoint. Sergeant Jones asked Officer Fernino to come to his location.

At some point during the radio conversation between Sergeant Jones and Officer Fernino, or shortly thereafter, the defendant began to walk away. This caused Sergeant Jones to believe that the defendant had been the driver of the white vehicle. As the defendant was walking away, Sergeant Jones began to approach the defendant and asked to see him "for a minute." The defendant stopped and walked back toward Sergeant Jones. Sergeant Jones did not recognize or know the defendant. Sergeant Jones observed that as the defendant walked back he was hesitant, "a little nervous," and had his hand in his pocket. Sergeant Jones then asked the defendant for a driver's license or other form of identification. The defendant complied and took his driver's license out

2. The court assumes for the purposes of this decision that the checkpoint was constitutionally proper. *See e.g., Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Maxwell v. City of New York,* 102 F.3d 664 (2d Cir.1996).

3. Cabot Street is a one-way street with traffic entering from Homestead Avenue and exiting on Albany Avenue.

4. The officers were in uniform and marked police cruisers were parked on the side of the street, halfway up the block.

5. There is no evidence to indicate that Sergeant Jones recognized any of the individuals standing on the sidewalk, had knowledge concerning their backgrounds or criminal histories, or had received any reports connecting them or the vehicles to criminal activity.

of his wallet or back pocket and handed it to Sergeant Jones. When the defendant gave his driver's license to Sergeant Jones, Sergeant Jones announced that he was going to conduct a pat-down of the defendant for "officer safety" and the defendant's safety.

As Sergeant Jones attempted to pat down the defendant, the defendant resisted the search and began to struggle with Sergeant Jones. Sergeant Jones and the defendant wrestled with each other on top of a parked vehicle and then bounced off the vehicle onto a fence. At this point, Officer Fernino had made her way down from the checkpoint and saw Sergeant Jones struggling with the defendant. Officer Fernino also saw the defendant pull something out of his waistband and throw it into an adjacent yard. Officer Fernino then pulled her service weapon and ordered the defendant to stop wrestling with Sergeant Jones. The defendant stopped and was taken into custody.

A search of the defendant then revealed a loaded .25 caliber handgun in his right front pants pocket. The officers also recovered the object the defendant threw during the struggle and later determined that it contained three heat sealed envelopes containing heroin and nine plastic bags containing crack cocaine.

## III. DISCUSSION

The defendant challenges the warrantless search of his person on the basis that it violated the Fourth Amendment to the United States Constitution. The government responds that the defendant was lawfully searched by Sergeant Jones under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, because he had an articulable and reasonable suspicion to conduct an investigative stop and pat-down of the defendant.

■■■ Under *Terry v. Ohio, supra*, the police are permitted to stop and briefly detain a person for investigative purposes if they have a reasonable suspicion sup-

ported by articulable facts that criminal activity may be afoot, even if they lack probable cause under the Fourth Amendment. *Id.* at 28–31, 88 S.Ct. 1868. In order to establish reasonable suspicion, "[t]he officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. A valid investigative *Terry* stop must also be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.* at 19, 88 S.Ct. 1868 (citing *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)).

■■■ Once an officer has a reasonable suspicion sufficient to justify an investigative stop, the officer may, in certain circumstances, conduct a pat-down search of that person, commonly referred to as a "frisk," in order to check for any weapons which may pose a danger to the officer and others in the area. *Id.* at 30–31, 87 S.Ct. 1642. To conduct the frisk, the officer must have a reasonable fear for his own or others' safety. *Id.* at 30, 87 S.Ct. 1642. "That the initial 'stop' was permissible does not, of course, establish, without more, that any search, or 'frisk,' incident to that stop was equally sustainable.... [B]efore such a pat-down search can be conducted the police officer must have reason to believe that the suspect may be armed and dangerous." *United States v. Oates*, 560 F.2d 45, 61 (2d Cir.1977) (citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *Terry*, 392 U.S. at 27, 29, 88 S.Ct. 1868); *see also United States v. Pelusio*, 725 F.2d 161, 165 (2d Cir.1983) ("The permissible duration and intrusiveness of an investiga-

tive stop depend on the extent of the law enforcement interest and the seriousness of the conduct giving rise to a reasonable suspicion of unlawful activity.").

When evaluating the validity of an investigative stop and a protective frisk, the court must consider the totality of the circumstances on a case by case basis. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "What might be unreasonable when an officer merely suspects that a minor offense has been committed is not unreasonable when ... officers have reason to fear that a suspected criminal is armed." *Pelusio,* 725 F.2d at 165 (quoting *United States v. Harley,* 682 F.2d 398, 402 (2d Cir.1982)). The burden of showing that a warrantless search did not violate the Fourth Amendment rests with the United States. *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *United States v. Perea,* 986 F.2d 633, 639 (2d Cir.1993).

The question presented here is whether Sergeant Jones had a reasonable, articulable suspicion that Crump was engaged in criminal activity and was armed and dangerous, justifying both the stop and the frisk. As an initial matter, the court finds that the encounter between Sergeant Jones and the defendant did not rise to the level of a *Terry* stop until Sergeant Jones informed the defendant that he was going to be given a pat-down. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (noting that a stop does not occur until a reasonable person would have believed he was not free to leave). Prior to that point, the encounter was consensual and the defendant willingly agreed to speak with Sergeant Jones. *See United States v. Glover,* 957 F.2d 1004, 1008 (2d Cir.1992) (determining that a consensual encounter with a citizen "may be initiated by the police without any objective level of suspicion and does not, without more, amount to a 'seizure' implicating the

Fourth Amendment's protections.") (citing *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) and *United States v. Hooper,* 935 F.2d 484, 490 (2d Cir.), *cert. denied,* 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991)).

When Sergeant Jones began to frisk the defendant, Sergeant Jones did not have a reasonable suspicion to believe that the defendant was *armed and dangerous.* At that time, Sergeant Jones was merely pursuing an investigation into possible motor vehicle violations. Sergeant Jones may have had a reasonable basis for further questioning of the defendant for such violations, but he did not have a reasonable basis to conclude at that time that the defendant was armed and dangerous, which would warrant the more intrusive protective frisk. Because the totality of the circumstances in this case does not present sufficient specific and articulable facts which could reasonably justify Sergeant Jones' frisk of the defendant, the court determines that the frisk of the defendant which ultimately led to the discovery of the gun in his pants pocket was improper.

The facts relied on by the government to support the frisk of the defendant are: (1) the encounter took place in a high crime neighborhood; (2) Sergeant Jones believed the defendant and his companions were deliberately trying to avoid the checkpoint; (3) the defendant walked away from Sergeant Jones; (4) the defendant was hesitant and a little bit nervous; and (5) the defendant had his hand in his pocket before taking it out to give his driver's license to Sergeant Jones. These facts taken together, and with rational inferences drawn from them, do not create reasonable suspicion to justify the frisk of the defendant.

Sergeant Jones was not investigating a violent crime and had no information suggesting the defendant was armed, likely to be armed, had recently engaged in a crime of violence, or was about to engage in a

crime of violence. *See Terry*, 392 U.S. at 6–7, 88 S.Ct. 1868 (officer suspected persons of preparing for an armed robbery). Rather, Sergeant Jones was investigating whether the defendant had committed a motor vehicle violation. Sergeant Jones also did not have any information about the defendant's criminal history to indicate that he could be armed and dangerous and Sergeant Jones did not see a weapon or a bulge in the defendant's pants pocket to indicate the presence of a weapon. *See United States v. Hamilton*, 978 F.2d 783, 785 (2d Cir.1992) (officers' view of a bulge in pocket provided reasonable justification for pat-down).

That the defendant walked away from Sergeant Jones also does not lead to the conclusion that the defendant was armed and dangerous, especially since the defendant walked back to Sergeant Jones when called. Sergeant Jones did not testify that the defendant was uncooperative or failed to produce a driver's license when asked. In addition, the fact that the defendant was acting "a little nervous" has limited significance since most citizens, whether innocent or guilty, are likely to exhibit some signs of nervousness when confronted by the police. *See United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994). Finally, the fact that this encounter took place in a high crime area is also not enough, by itself or as part of the totality of these circumstances, to raise a reasonable suspicion to justify the pat-down. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993).

In view of all of the circumstances surrounding the encounter between Sergeant Jones and the defendant, the court finds that Sergeant Jones did not have a reasonable suspicion to frisk the defendant. Accordingly, the search which uncovered the gun in the defendant's pants pocket violated the Fourth Amendment.

## IV. CONCLUSION

For the reasons set forth above, he defendant's motion to suppress is granted.

SO ORDERED.

*RULING ON GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE RULING ON DEFENDANT'S MOTION TO SUPPRESS*

The defendant, Anthony Crump ("defendant" or "Crump"), was indicted for possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). On April 16, 1999, the court granted the defendant's motion to suppress the firearm as evidence. The basis for that ruling was that the pat-down search of the defendant conducted by the Hartford police which led to the discovery of the firearm was unconstitutional because there was an insufficient basis to believe the defendant was armed and dangerous. On April 30, 1999, the government filed a motion for reconsideration of the court's ruling. The motion for reconsideration raises for the first time the argument that the defendant's resistance and struggle with the Hartford police provided a separate basis to arrest the defendant and conduct the search incident to that arrest which uncovered the firearm.

For the reasons set forth below, the government's motion for reconsideration is GRANTED and, upon reconsideration, the defendant's motion to suppress is DENIED.

## I. FACTS

### A. Original Findings of Fact

The following findings of fact are taken from the court's earlier ruling on the defendant's motion to suppress.

On September 1, 1998, Sergeant Gordon Jones, an eighteen-year veteran of the Hartford police department who has made numerous investigatory stops and arrests, was conducting motor vehicle safety stops with four other Hartford police officers at a checkpoint located at the mid-point of Cabot Street in Hartford. Cabot Street is located in a high crime area known for

drug trafficking, street violence, and motor vehicle violations. The purposes of the checkpoint were to determine whether the motor vehicle operators were in compliance with state motor vehicle laws and to reduce criminal activity in that neighborhood.[1]

At dusk, Sergeant Jones was standing on Cabot Street when he observed two vehicles pull onto Cabot Street from Homestead Avenue.[2] The first vehicle was blue and the second was white. Both vehicles stopped abruptly, short of the checkpoint, and backed up into parking spaces alongside the curb. Sergeant Jones, who was approximately twenty to thirty feet from the vehicles when they stopped before backing up, believed that both vehicles were attempting to avoid the police officers at the checkpoint.[3] Sergeant Jones then began walking toward the vehicles to investigate and ask the drivers for their operator's licenses, registrations, and insurance cards.

As Sergeant Jones approached the vehicles, the occupants had already exited the vehicles and were standing on the sidewalk in front of a building.[4] Sergeant Jones asked the person whom he believed to be the driver of the blue vehicle for his license, registration, and insurance card. This person produced his license and went to the blue vehicle to retrieve the other requested documents.

Sergeant Jones believed that one of the two other men standing on the sidewalk had been driving the white vehicle. One of these men was the defendant, Anthony Crump, but Sergeant Jones was not certain if Crump had been the driver of the white vehicle. Sergeant Jones asked both men which one of them had been driving the white vehicle and both denied being the driver. While he was standing with the defendant and the other man on the sidewalk, Sergeant Jones received a call on his radio from Officer Fernino, one of the other officers at the checkpoint. Officer Fernino had called to ask Sergeant Jones about an individual that had previously been stopped at the checkpoint. Sergeant Jones asked Officer Fernino to come to his location.

At some point during the radio conversation between Sergeant Jones and Officer Fernino, or shortly thereafter, the defendant began to walk away. This caused Sergeant Jones to believe that the defendant had been the driver of the white vehicle. As the defendant was walking away, Sergeant Jones began to approach the defendant and asked to see him "for a minute." The defendant stopped and walked back toward Sergeant Jones. Sergeant Jones did not recognize or know the defendant. Sergeant Jones observed that as the defendant walked back he was hesitant, "a little nervous," and had his hand in his pocket. Sergeant Jones then asked the defendant for a driver's license or other form of identification. The defendant complied and took his driver's license out of his wallet or back pocket and handed it to Sergeant Jones. When the defendant gave his driver's license to Sergeant Jones,

1. The court assumed for the purposes of the initial decision on the defendant's motion to suppress that the checkpoint was constitutionally proper. See, e.g., Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Maxwell v. City of New York, 102 F.3d 664 (2d Cir.1996). On reconsideration of the motion to suppress, the constitutionality of the checkpoint need not be addressed because of the court's ruling concerning the intervening conduct of the defendant. See, infra, Section II. B.

2. Cabot Street is a one-way street with traffic entering from Homestead Avenue and exiting on Albany Avenue.

3. The officers were in uniform and marked police cruisers were parked on the side of the street, halfway up the block.

4. There is no evidence to indicate that Sergeant Jones recognized any of the individuals standing on the sidewalk, had knowledge concerning their backgrounds or criminal histories, or had received any reports connecting them or the vehicles to criminal activity.

Sergeant Jones announced that he was going to conduct a pat-down of the defendant for "officer safety" and the defendant's safety.

As Sergeant Jones attempted to pat down the defendant, the defendant resisted the search and began to struggle with Sergeant Jones. Sergeant Jones and the defendant wrestled with each other on top of a parked vehicle and then bounced off the vehicle onto a fence. At this point, Officer Fernino had made her way down from the checkpoint and saw Sergeant Jones struggling with the defendant. Officer Fernino also saw the defendant pull something out of his waistband and throw it into an adjacent yard. Officer Fernino then pulled her service weapon and ordered the defendant to stop wrestling with Sergeant Jones. The defendant stopped and was taken into custody.

A search of the defendant then revealed a loaded .25 caliber handgun in his right front pants pocket. The officers also recovered the object the defendant threw during the struggle and later determined that it contained three heat sealed envelopes containing heroin and nine plastic bags containing crack cocaine.

### B. Additional Findings of Fact

In addition to the findings of fact listed above, the court makes the following findings of fact based on the evidence presented at the hearing on the motion to suppress.

When the Hartford Police took the defendant into custody, one of the crimes he was charged with was interfering with an officer in violation of Connecticut General Statute § 53a–167a,[5] based on his struggle with Sergeant Jones. The defendant's struggle with Sergeant Jones provided Sergeant Jones and the Hartford police with probable cause under Connecticut law

to arrest the defendant for interfering with an officer.

## II. DISCUSSION

### A. The Motion for Reconsideration

█ The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*

In its motion for reconsideration the government presents two arguments. The first is that the evidence supported a reasonable suspicion by Sergeant Jones that the defendant was armed and dangerous. The court previously addressed this argument in its ruling on the defendant's motion to suppress and declines to reconsider the ruling on that basis.

The second argument raised by the government is that even if Sergeant Jones did not have reasonable suspicion to believe that the defendant was armed and dangerous to justify the pat-down of the defendant, the defendant's resistance and struggle with Sergeant Jones provided a separate basis to arrest the defendant and conduct a search incident to that arrest. This argument was not previously raised by the government or addressed by the court in its earlier ruling. In addition, because this argument and the additional case law cited by the government might reasonably be expected to alter the conclusion reached by the court, the interests of justice require that the government's motion for reconsideration be granted with respect to this second argument.[6]

---

**5.** Conn.Gen.Stat. § 53a–167a makes it unlawful to "obstruct, resist, hinder or endanger" any police officer in the performance of his duties.

**6.** The defendant agrees that the motion for reconsideration should be granted but maintains that the motion to suppress should remain granted.

## B. Reconsideration of the Ruling on Defendant's Motion to Suppress

In the previous ruling on the defendant's motion to suppress, the court found that the Hartford police did not have a reasonable basis to conduct a pat-down of the defendant and, as a result, the search of the defendant which uncovered the firearm violated the Fourth Amendment.

The government now argues that the struggle between the defendant and Sergeant Jones, which occurred between the time Sergeant Jones began the pat-down and the time the firearm was actually found by the police, provided a separate basis for the Hartford police to arrest the defendant and conduct a search incident to that arrest. The key to the analysis is whether, given the primary illegality of the initial pat-down, the evidence which the defendant seeks to suppress has been discovered through exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint. *See Brown v. Illinois,* 422 U.S. 590, 598, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Whether unlawful resistance to an unconstitutional stop or search by the police is an intervening illegal act which can allow for the admissibility of evidence such as the defendant's firearm is apparently one of first impression in the Second Circuit. Other circuits, though, have held that if a defendant's response to an illegal stop "is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime" and any evidence uncovered by a search incident to that arrest is admissible against the defendant. *United States v. Bailey,* 691 F.2d 1009, 1017 (11th Cir.1982) (fleeing suspect struck officer and attempted to grab officer's gun during struggle following illegal stop); *see also United States v. Sprinkle,* 106 F.3d 613, 619 (4th Cir.1997) (suspect fled when officer began illegal pat-down and during ensuing chase suspect drew handgun and fired at officer); *United*

*States v. Dawdy,* 46 F.3d 1427, 1430–31 (8th Cir.1995) (suspect struggled with officer who was presumed to have been illegally attempting to place suspect in custody); *United States v. Waupekenay,* 973 F.2d 1533, 1537 (10th Cir.1992) (suspect brandished semi-automatic rifle after police illegally entered home); *United States v. King,* 724 F.2d 253, 256 (1st Cir.1984) (second suspect shot at police while officer was conducting an illegal search of first suspect); *United States v. Garcia,* 516 F.2d 318, 319–20 (9th Cir.1975) (suspect fled in automobile at excessive rate of speed after illegal stop at motor vehicle checkpoint); *United States v. Nooks,* 446 F.2d 1283, 1288 (5th Cir.1971) (suspect fled in automobile at excessive rate of speed and fired shots at police after illegal arrest).

The reasons for holding that a new and distinct crime, even if triggered by an illegal stop or search, is a sufficient intervening event to provide an independent basis for an arrest and the admissibility of evidence uncovered during a search incident to that arrest include: (1) "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct[,]" *Bailey,* 691 F.2d at 1017–18; (2) the exclusionary rule does not extend so far as to require suppression when the discovery of the evidence can be traced to the separate offense, *see, e.g., Waupekenay,* 973 F.2d at 1538; and (3) to hold otherwise would encourage persons to resist the police and create potentially violent and dangerous confrontations. *Id.* Challenges to even unconstitutional police searches must be made in the courts, not on the street.

■ In this case, the defendant resisted and struggled with Sergeant Jones as soon as he began the pat-down. The struggle lasted long enough and was violent enough for the defendant and Sergeant Jones to wrestle with each other on top of a parked car and then bounce off the car onto a fence before the defendant was restrained.

Although prompted by the pat-down, the defendant's conduct provided Sergeant Jones with probable cause to arrest the defendant under Connecticut law for interfering with a police officer. *See* Conn.Gen. Stat. § 53a–167a; *cf.* Conn.Gen.Stat. § 53a–23 ("A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."). Such conduct by the defendant was an intervening illegal act and a new, distinct crime for which he was taken into custody.

The commission of the interfering offense by the defendant provided a sufficient causal break from the illegal pat-down so as to allow for the admissibility of the firearm as evidence. Thus, the firearm is admissible as a result of the search incident to the arrest for interfering, rather than as a product of the unconstitutional police conduct. *See, e.g., Sprinkle*, 106 F.3d at 619 ("Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible."). The firearm is admissible on that basis even though it would have been suppressed if uncovered during the unconstitutional pat-down.

Accordingly, despite the illegality of the initial pat-down of the defendant, the search which revealed the firearm was conducted pursuant to the defendant's lawful arrest for interfering with an officer and the firearm is admissible as evidence against the defendant in the instant prosecution.[7]

## IV. CONCLUSION

For the reasons set forth above, the defendant's motion for reconsideration is granted and, upon reconsideration, the defendant's motion to suppress is denied.

SO ORDERED.

---

7. There is no evidence to indicate that the conduct of Sergeant Jones was "flagrantly illegal or fraught with evil purpose," or in bad faith, *cf. United States v. Oguns*, 921 F.2d 442, 449 (2d Cir.1990), or that he intentionally provoked the defendant or instigated the intervening criminal conduct as a pretext to provide an independent basis for the interfering arrest. *See U.S. v. Bailey*, 691 F.2d 1009, 1018 n. 9 (11th Cir.1982). Such a showing may cause the suppression of evidence notwithstanding the intervening criminal conduct.