Commonwealth of Virginia

   v.

Richard Dean Cooper

October 12, 2001

Case No. (Criminal) 00-461

BY JUDGE EDWARD L. HOGSHIRE

Richard Dean Cooper is charged with one count of forging a public document by signing a uniform summons with the name Anthony Brown, in violation of Virginia Code § 18.2-168. Defendant filed a motion to suppress the uniform summons and Defendant's statements to the police officer on the basis that he did not have reasonable and articulable suspicion that Defendant was involved in criminal activity. The motion is denied. Although the uniform summons was gleaned during an illegal stop, the "new and distinct crimes" exception to the exclusionary rule purges the taint and, therefore, the evidence is admissible.

## Statement of Facts

On or about 2:30 a.m., July 7, 2000, City of Charlottesville Police Officer Brian O'Donnell was moonlighting as a private security guard for the Garrett Square Property Management. Garrett Square is a conglomeration of dwellings marked at its several entrances with "Private Property" signs. While O'Donnell was not on duty at the time, he was dressed in his police uniform, carrying his police-issued sidearm, and identified with his police badge. This created not only the appearance of a police officer in the eyes of Defendant but also the eyes of the law. The Commonwealth concedes that O'Donnell was working as an agent of the state and therefore United States Constitution,

Fourth Amendment, and Virginia Constitution, Section Eight, scrutiny are implicated. The Court agrees.

Not recognizing Defendant as a resident of the apartment complex, O'Donnell ordered Defendant to stop and produce identification. Defendant complied and produced his father's license, identifying it as such only after O'Donnell disbelieved him due to an apparent age discrepancy between the picture and Defendant. Upon being questioned as to what he was doing on private property, Defendant responded that he was, "just passing through." O'Donnell issued Defendant a uniform summons for trespassing which Defendant allegedly signed with the name, "Anthony Brown," the same as on his father's identification.

## Analysis

Under familiar principles, if the forged document and statements made by the defendant were procured in an illegal seizure, then both should be suppressed under the exclusionary rule. It is Defendant's position that the seizure was illegal because it was made without particularized suspicion and therefore the fruits of that violation should be suppressed. The Commonwealth argues that, even if the seizure was in violation of the Fourth Amendment, the evidence therefrom is admissible under the "new and distinct crime" exception to the exclusionary rule. Essentially, by allegedly forging the uniform summons, Defendant committed a new and distinct criminal act while in custody, thereby purging the taint of the initial police misconduct.

Defendant relies on *Ewell v. Commonwealth*, 254 Va. 214 (1997), noting the similarity in the facts of that case to the one at bar — a uniformed police officer working as a residential complex security guard during his off-hours noted a potential trespasser in a vehicle. The officer stopped the vehicle which had moved onto a public street and thereafter saw in plain view a crack pipe fashioned out of a beer can. The Virginia Supreme Court ruled that the officer's unfamiliarity with the individual did not constitute particularized suspicion to effect a stop and therefore the crack pipe was suppressed under the exclusionary rule. As this ruling is applied to the instant case, the Court finds that O'Donnell also had no particularized suspicion of Defendant and therefore the stop was made in violation of the Fourth Amendment to the United States Constitution and Section Eight of the Virginia Constitution.

The Commonwealth relies on *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997), in support of evoking the "new and distinct crime" exception to the exclusionary rule. The Fourth Circuit Court of Appeals described this exception: "If a suspect's response to an illegal stop 'is itself a new, distinct

crime, then the police constitutionally may arrest the [suspect] for that crime'." (quoting, *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)). In that case, Sprinkle fled when the officer began a pat-down of him. During the ensuing chase, Sprinkle pulled out a gun and shot at the officer, a violation of South Carolina Code § 16-23-410.

*Sprinkle* reversed the district court's decision to suppress, noting:

> There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest. As the *Bailey* court recognized, "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." (internal citations omitted).

*Id.* at 619.

Other federal circuits have regularly evoked the "new and distinct crime" exception to the exclusionary rule, predominately in cases where an illegally seized or stopped defendant shot or attempted to shoot at law enforcement officers. *See, United States v. Bailey*, 691 F.2d 1009 at 1012, 1018-19 (11th Cir. 1982) (assuming that first arrest was illegal, second arrest was legal because defendant, when caught after fleeing, struck DEA agent and tried to grab the agent's gun); *United States v. Waupekenay*, 973 F.2d 1533, 1537 (10th Cir. 1992) (although police entered suspect's trailer illegally, suspect commenced new illegal activity when he aimed semi-automatic rifle at police); *United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir. 1984) (assuming search warrant for house was invalid, when someone inside began shooting, "the house became the scene of a crime committed in the officers' presence"); *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984) (assuming attempted search of passenger was illegal, driver's "shooting [at police] was an independent intervening act which purged the taint of the prior illegality"); and *United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir. 1971) (whether Defendant's first arrest was legal is irrelevant once he fled and shot at sheriff).

Invocation of the "new and distinct crime" exception to the exclusionary rule has received sparse treatment in the Commonwealth. The Virginia Supreme Court first mentioned the "new and distinct crime" exception in *Woodson v. Commonwealth*, 245 Va. 401, 406 (1993), citing the Eleventh Circuit's decision in *United States v. Bailey, supra*, with approval. Thereafter the exception was explicitly adopted by the Circuit Court of Fairfax County in *Commonwealth v. Davis*, 53 Va. Cir. 140 (2000). In that case, police

illegally entered the Defendant's house in an effort to serve a temporary detention order against him. The police, who did not identify themselves, charged into the home causing the defendant to retreat and grab his gun. Defendant was shot in the scuffle and arrested for assault. Judge Klein declined "to extend the scope of the exclusionary rule to encompass criminal acts against police officers who are effecting unconstitutional searches or seizures." *Id.* at 150.

The common thread in all of the aforementioned opinions is the severity of the secondary crime which purges the tainted evidence and the public policy of holding violent defendants who endanger law enforcement officials' lives accountable. This thread does not run through the instant case. It is much easier to evoke the "new and distinct crimes" exception when the Defendant attempted to murder an officer, rather than merely (and purportedly) attempted to deceive an officer in response to an illegal stop. However, *United States v. Garcia-Jordan* lends guidance to this dilemma. 860 F.2d 159 (5th Cir. 1988). There, U.S. Border Patrol agents stopped a truck driven by an illegal alien arguably without probable cause. The defendant attempted to deceive the agents by impersonating an American citizen, in violation of 18 U.S.C. § 911. The Court of Appeals affirmed the denial of a motion to suppress, noting that the new and distinct crime activated the so-named exception to the exclusionary rule.

## *Conclusion*

Recognizing the utility of a bright-line rule and the public policy which the "new and distinct crimes" exception serves, it is the opinion of this court that the crime of forging a public document would purge the stop's illegality. Accordingly, the motion to suppress is denied.