[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Jeffrey Gaulin, was charged with (1) Breach of peace in violation of General Statutes § 53a-181; (2) Threatening in violation of General Statutes § 53a-62; (3) Reckless endangerment in violation of General Statutes § 53a-63; (4) Assault on a police officer in violation of General Statutes § 53a-167c; and (5) Interfering with a police officer in violation of General Statutes § 53a-167a. CT Page 12959
This court granted the defendant's motion to suppress on August 4, 1998. The court concluded that the police officer's "initial entry [into the defendant's home] was illegal and tainted all evidence obtained as a direct result of that illegal entry, as well as the fruits, or evidence, derived therefrom."State v. Gaulin, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 133099 (August 4, 1998, Harper, J.).
The defendant filed a motion to dismiss on May 19, 1998. The motion was granted on August 4, 1998 and vacated on August 10, 1998 after a hearing on the state's motion for reconsideration. An evidentiary hearing on the motion to dismiss was held on September 18, 1998 and continued on October 2, 1998.
The defendant moves to dismiss the information pursuant to Practice Book § 815, now Practice Book (1998 Rev.) § 41-8, on the ground that the defendant's arrest is not supported by probable cause or is otherwise illegal. The defendant argues that the information should be dismissed because all the evidence necessary to establish probable cause to proceed is tainted by the illegal entry and is therefore inadmissible. The defendant further argues that the arrest was illegal and therefore would impair the fairness of subsequent prosecution. By contrast, the state argues that there is no privilege to resist an arrest and that the charges exist regardless of the suppression of evidence.
The facts of this case are extensively discussed in the court's prior decision on the motion to suppress. Id. The following facts are pertinent to the motion to dismiss. The court determined that the police officer, Corporal David Evans, responded to a loud music complaint at the defendant's residence. After getting no response to his knocks and yells, Evans illegally entered the home by stepping into the foyer prior to the defendant's appearance. The defendant, upon hearing someone in the house, descended the stairs with a rifle, which he lowered when Evans ordered that he drop the weapon. After the defendant failed to respond to repeated requests to drop the weapon, Evans grabbed the defendant, forcibly removed him from the home and took away the weapon.
Given the factual scenario, it is clear that the rifle is derived from the illegal entry and is therefore inadmissible.[1] It must be determined whether all evidence, including testimony of Evans, is tainted by the illegal entry in order to rule on the defendant's motion to dismiss. CT Page 12960
The following additional facts are relevant. The defendant began resisting Evans while he was in the house and continued to be uncooperative until he was seated in the patrol vehicle.
While the defendant did not attempt to hit, kick, punch or in any way strike Evans, he did not want to come out of the house, he yelled, and "lunged backwards" when Evans was putting him in the car, thereby breaking Evans' thumb.
The defendant asserts that everything that occurred after Evans' entry into the house is tainted by the illegal entry. According to the defendant, "but for Corporal Evans['] warrantless entry, there would be no facts which could give rise to an arrest of the Defendant." (Supplemental Memorandum in Support of Motion to Dismiss, p. 4.) The state contends that the only evidence suppressed is the rifle.
"Under the exclusionary rule, evidence must be suppressed if it is found to be the `fruit' of prior police illegality. . . All evidence is not, however, a `fruit of the poisonous tree' simply because it would not have been discovered but for the illegal action of law enforcement officials." (Citations omitted.) State v. Blackman, 246 Conn. 547, 553, (1998). "Rather, the more apt question in such a case is whether, granting establishment of primary illegality, the evidence to which objection is made has been come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . The initial determination is, therefore, whether the challenged evidence is in some sense the product of illegal government activity." (Citations omitted; internal quotation marks omitted.) State v. Colvin, 241 Conn. 650, 656-57, 697 A.2d 1122
(1997).
"[T]he factors to be considered in determining whether the taint has been dissipated include the temporal proximity of the illegal police action and the discovery of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct." (Internal quotation marks omitted.) State v. Blackman, supra, 246 Conn. 557. "These factors focus upon the causal relationship between the primary illegality, in this case the illegal [entry], and the evidence allegedly derived from this illegal conduct, and the actual purpose and flagrancy of the police conduct." State v. Ostroski,201 Conn. 534, 547, 518 A.2d 915 (1986). Contrary to the CT Page 12961 defendant's argument, the court will not follow a "but for" rule. See id., 546.
Neither the defendant nor the state offer an extensive analysis of the three pertinent factors: (1) temporal proximity; (2) intervening circumstances; and (3) purpose/flagrancy of misconduct. The defendant does offer a brief, conclusory discussion, asserting that very little time elapsed, there was no attenuation, and entry into one's home is a flagrant violation of one's constitutional rights. The state does not refer to the three factors.
There is no Connecticut authority or United States Supreme Court precedent controlling on this issue. The state relies on Connecticut caselaw holding that there is no privilege to resist an illegal arrest, although a common law privilege to resist illegal entry has not been abrogated.[2] See, e.g., State v.Gallagher, 191 Conn. 433, 441, 465 A.2d 323 (1983) (General Statutes § 53a-23 abrogated common law right to resist unlawful arrest but not unlawful entry). These cases, however, do not address whether evidence regarding resistance to unlawful arrest or entry was tainted by the illegal police conduct.
In Gallagher, for instance, the court stated: "The remedy for an unlawful arrest is the suppression of evidence obtained thereby. . . We observe that the defendant has made no claim, either at trial or on appeal, that any evidence adduced at trial should have been suppressed." (Citations omitted; internal quotation marks omitted.) Id., 438. See also State v. Brosnan,221 Conn. 788, 803, 608 A.2d 49 (1992) ("The issue here is whether the defendant was entitled to an appropriate jury instruction on the privilege to resist an unlawful entry"); Statev. Privitera, 1 Conn. App. 709, 715, 476 A.2d 605 (1984) (issue is whether it is an essential element of interfering with a police officer that the police officer was acting legally); In reAdalberto S., 27 Conn. App. 49, 604 A.2d 822 (1992) (issue is whether trial court improperly excluded evidence of alleged beating with regard to charge of interfering with a police officer).[3]
With regard to the three factors, it is clear that the temporal proximity weighs in favor of determining that evidence of the events after the illegal entry is tainted. Evans testified that the defendant started resisting inside the house and continued until he was inside the police cruiser. Evans also CT Page 12962 testified that it took him about five seconds to pull the defendant out of the house and that the defendant was yelling the whole time. This factor, however, is not dispositive.
 Some courts have found the intervening act of the defendant to be so separate and distinct from the illegal entry or arrest as to break the causal chain. See, e.g., [State v.] Bale, 267 N.W.2d [730] at 733 [(Minn. 1978)] (stressing that the assault committed by the defendant was an "intervening act of the defendant's free will which dissipated any taint" caused by unlawful police behavior); [State v.] Townes, 41 N.Y.2d [97] at 102-03, 390 N.Y.S.2d [893] at 897-98, 359 N.E.2d [402] at 406 [(1976)] (holding that defendant's "free and independent action" in assaulting police officers "render[ed] any `connection between the lawless conduct of the police and the discovery of the challenged evidence . . . "so attenuated as to dissipate the taint"'") (citations omitted); [State v.] Saavedra, 396 N.W.2d [304] at 305 [(N.D. 1986)] (concluding that defendant's independent and intervening actions broke the chain of causation after considering [the three factors])."
 United States v. Waupekenay, 973 F.2d 1533, 1538 (10th Cir. 1992). See also United States v. Sheppard, 901 F.2d 1230,1235 (5th Cir. 1990) (defendant's flight, after police misconduct and defendant's subsequent consent to search, "constituted criminal activity and functioned to break any nexus" between alleged police misconduct and evidence seized following apprehension of defendant); UnitedStates v. Chin, 859 F. Sup. 48, 51 (E.D.N.Y. 1994) ("defendant's flight, and subsequent violations of the law were not foreseeable, and constituted intervening acts free of the initial taint associated with the [illegal] stop of his vehicle"); Statev. Johnson, 573 A.2d 909, 918 (N.J. 1990) (where police made illegal arrest and then apprehended defendant after his flight, courts "understandably held that the escape itself was an intervening circumstance between the illegal detention and [evidence introduced to prove the escape or new offense]").
With regard to the third factor, the defendant correctly asserts that "physical entry of the home is the chief evil against which the working of the Fourth Amendment is directed." (Internal quotation marks omitted.) State v. Gallagher, supra,191 Conn. 443, citing Payton v. New York, 445 U.S. 573, 578,100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Nevertheless, the court must consider both the flagrancy and purpose in the context of the caselaw. The purpose of the police misconduct here does not appear to be as improper as the goals of illegal police conduct CT Page 12963 discussed in other cases. For example, the factual situation here does not involve police officers who planned to utilize an illegal entry or arrest for investigatory purposes. See, e.g.,Brown v. Illinois, 422 U.S. 590, 605, 95 S.Ct. 2254,45 L.Ed.2d 416 (1975) (illegality had quality of purposefulness where impropriety of arrest was obvious and police acknowledged that illegal arrest was "for investigation" and "calculated to cause surprise, fright and confusion"); State v. Ostroski, supra,201 Conn. 549 (misconduct not purposeful where detention was not intended to have defendant make challenged statement or to "acquire a totally unexpected, voluntary admission by the defendant to his friend").
In the more egregious cases, the purposeful police misconduct was aimed at obtaining evidence or incriminating statements with regard to the crime of which the person was suspected. In such cases, the purpose of the illegal conduct was directly related to finding evidence to support a charge against the person. See, e.g., State v. Johnson, supra, 573 A.2d 919 (flagrancy and purpose of police misconduct is most striking feature where defendant was suspect in murder and police unlawfully detained defendant, failed to Mirandize, and ignored defendant's invocation of right to silence and request for counsel).
Here, it is highly unlikely that Evans illegally entered the defendant's residence with the goal of inducing physical resistance, so that the state could argue that the resistance was not tainted by the illegal entry. In light of the fact that resistance may rise to the level of deadly force, it is unlikely that the police would act illegally with the purpose to provoke resistance to arrest, especially in the circumstances here.
In addition to the three factors, the court must also consider the purpose of the exclusionary rule. "Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury. . . Accordingly, [a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." (Citations omitted; internal quotation marks omitted.) UnitedStates v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405,82 L.Ed.2d 677 (1984). The objective of vindicating Fourth Amendment rights would not be furthered by concluding that all evidence of events taking place after Evans' illegal entry is tainted. CT Page 12964
The court first notes that the legislature has expressed its position by doing away with the common law right to resist arrest even where the arrest is illegal. See General Statutes § 53a-23. Thus, prevention of violence against police officers is paramount. This goal would be undermined if an illegal arrest tainted evidence of the arrestee's subsequent use of force. The same holds true for illegal entry.[4] Moreover, because resistance is not a foreseeable consequence of illegal entry, it is unlikely that police officers would count on resistance "to salvage" an illegal entry. Cf. United States v. Chin, supra,859 F. Sup. 52. Thus, excluding all evidence of the defendant's alleged resistance here would not further Fourth Amendment
protection.
"The law is clear . . . that even an unlawful arrest does not excuse an assault upon an arresting police officer. . . [E]ven if the attempt by state policemen to make an arrest had been unlawful, the persons being arrested could be prosecuted for assault offenses committed thereafter.
"It follows, then, that evidence of the assault could not be properly suppressed. The testimony of the officers that the [defendants] had assaulted them following their attempt to make an arrest could not be suppressed merely because the court believed the attempted arrest to be illegal. Any other rule would be an absurdity. Under a contrary rule, although an assault upon a police officer could not be justified by the policeman's attempt to make an unlawful arrest, the [state] would be precluded from proving the assault because its evidence would be subject to suppression. The effect of suppression would be to prevent prosecution for the assault. Such a rule would render ineffective a major portion of the [penal code] intended to protect law enforcement officers. It would have the effect of jeopardizing the safety of police officers by placing them at the mercy of any person, criminal or noncriminal, who believed he was being arrested unlawfully." Commonwealth v. McKeirnan,487 A.2d 7, 10-11 (Pa.Super. 1985).
"A purpose of the exclusionary rule, it is true, is to deter unlawful police conduct by disallowing the use of evidence obtained pursuant to an illegal arrest. . . The rule does not apply, however, to seal the lips of law enforcement officers with respect to crimes committed in their presence during or following an arrest. They may testify to criminal conduct committed in CT Page 12965 their presence while making an arrest even though the arrest is subsequently determined to be unlawful." Id., 11.
Several other courts have held that illegal conduct constitutes an intervening event; see cases cited supra; or is otherwise not tainted by the police misconduct. See, e.g., UnitedStates v. Dawdy, 46 F.3d 1427, 1431, cert. denied, 516 U.S. 872
(8th Cir. 1995) (defendant's response to invalid arrest or Terry
stop may constitute independent grounds for second, legitimate arrest); United States v. Garcia, 516 F.2d 318, 319 (9th Cir.), cert. denied, 423 U.S. 1020 (1975) (where illegal conduct of police is only a necessary condition leading to defendant's act, and act is not intended by illegal police conduct, no taint attaches to act of defendant); United States v. Nooks,446 F.2d 1283, 1288 (5th Cir.), cert. denied, sub nom., Hughes v.United States, 404 U.S. 945 (1971) (nexus had been attenuated between original illegal arrest and arrest after defendant's flight and other illegal acts).
Furthermore, "where the defendant's response [to illegal arrest] is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct. . . Unlike the situation where in response to the unlawful police action the defendant merely reveals a crime that already had been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct. The Supreme Court has clearly directed that the attenuation analysis be informed by `considerations relating to the exclusionary rule and the constitutional principles it is designed to protect.' United States v. Ceccolini, 435 U.S. 268,279, 98 S.Ct. 1054, 1061, 55 L.Ed.2d 268 (1978). . ." (Citations omitted; internal quotation marks omitted.) UnitedStates v. Bailey, 691 F.2d 1009, 1017 (11th Cir.), cert. denied,461 U.S. 933 (1982).
"Moreover, sound policy reasons obviously argue that the law should discourage and deter the incentive on the part of potential arrestees to forcibly resist arrest or to commit other CT Page 12966 new and separate crimes." Id. See also United States v.Waupekenay, supra, 973 F.2d 1538 (courts have stressed limited objective of exclusionary rule and "strong public interest in preventing and punishing force or threats of force directed against police officers" in finding that illegal entry or arrest does not taint subsequent illegal acts).
The reasoning of the Supreme Judicial Court of Maine is persuasive. "Despite the illegality of the entry into [the defendant's] home, it is beyond question that the exclusionary rule does not extend to suppress evidence of independent crimes taking place as a reaction to an unlawful arrest or search. . . We agree completely with the ruling of the Oregon Court of Appeals in State v. Burger, 55 Or. App. 712, 639 P.2d 706
(1982). . . We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. We do not believe that either the state or federal constitution compels such a result." (Citations omitted.) State v. Boilard, 488 A.2d 1380, 1386-87 (Me. 1985).
Thus, the court determines that despite the factual, causal connection between the illegal entry and the defendant's subsequent actions, there are compelling reasons for holding that the taint of the illegal entry does not attach to all of the defendant's acts. As discussed above, the rifle is suppressed; if Evans had not illegally entered the home, the defendant would not have armed himself in response to the intrusion. Thus, the defendant's action in pointing the rifle at the intruder, in this case a police officer, was provoked by the illegal entry. The actions of the defendant once he realized that the intruder was a police officer, however, are not necessarily tainted. The defendant's decision to resist the officer's attempt to detain him can be considered an intervening event; further, the defendant's allegedly criminal acts subsequent to the entry constitute independent acts. Finally, the goal of theFourth Amendment and public policy dictate that the defendant cannot be immunized for his allegedly illegal acts solely because they followed police misconduct.
Therefore, the evidence consisting of the rifle and any CT Page 12967 testimonial evidence of the defendant's acts before Evans removed the rifle are tainted; having a rifle in your own home and even pointing it at an intruder are not necessarily criminal acts and are not attenuated from the illegal entry. By contrast, evidence of the defendant's actions after Evans took the rifle from the defendant, which allegedly include yelling and physically resisting Evans, are not tainted.[5] Whether these alleged actions constitute assault, reckless endangerment, interfering with a police officer, threatening, and breach of peace is a question for the jury.
Thus, the defendant is incorrect in asserting that evidence of all acts following the initial illegal entry are tainted and therefore suppressed. As a result, the court will not grant the motion to dismiss based on the defendant's first ground of insufficient evidence to establish probable cause to proceed.
The defendant also argues that the information should be dismissed because the defendant was illegally arrested[6] and any subsequent proceeding would be unfair. The state argues that even assuming the arrest was illegal, the defendant could not commit an assault on Evans.
"The relationship between an illegal arrest and a subsequent prosecution under federal constitutional law is well settled. The federal case law is clear that an illegal arrest will not bar a subsequent prosecution or void a resulting conviction." State v.Ostroski, supra, 201 Conn. 554. The defendant recognizes that Connecticut authority holds that "an illegal arrest imposes no jurisdictional barrier to a defendant's subsequent prosecution. . ." State v. Fleming, 198 Conn. 255, 263,502 A.2d 886, cert. denied, 475 U.S. 1143 (1986) (overruling State v.Licari, 153 Conn. 127, 214 A.2d 900 (1965), to the extent it holds otherwise). The defendant asserts, however, that theFleming exception applies here.
Under Fleming, "cases such as [State v.]Federici, [179 Conn. 46, 425 A.2d 916 (1979)] where the fairness of the defendant's trial is compromised by the circumstances of his arrest" are excluded from the holding. Statev. Ostroski, supra, 201 Conn. 555. Thus, "[a]n illegal arrest may impair the fairness of a subsequent prosecution only where evidence obtained as a direct consequence of that arrest is admitted against the defendant at trial." (Internal quotation marks omitted.) Id., citing State v. Ryerson, 201 Conn. 333, 338, CT Page 12968514 A.2d 337 (1986).
The defendant argues that all of the state's evidence was obtained as a result of his illegal arrest and therefore no fair trial is possible. As discussed above, however, some of the state's evidence is sufficiently attenuated from the police misconduct. The evidence deemed not tainted by illegality may be introduced at trial without impairing the fairness of the defendant's trial. Therefore, the court will not grant the defendant's motion to dismiss based on inherent unfairness of prosecution.
Accordingly, the defendant's motion to dismiss is denied.
THE COURT,
Lubbie Harper Jr., Judge